**ST. LOUIS, B. & M. RY. CO. v. BATH et al.**
(No. 8906.)

, (Court of Civil Appeals of Texas. Galveston. Feb. 3, 1927. Rehearing Denied March 3, 1927.)

1. Carriers &=92—Railroad company held liable for failure to deliver goods seized under legal process, where it failed to notify owner of seizure.

.Railroad company *held* liable for failure to deliver to consignee goods taken from its possession under legal process, where it failed to give notice of seizure to owner.

2. Carriers &=92—Presenting bill of lading and claiming shortage held notice of plaintiff's ownership, requiring carrier to notify him of seizure under legal process.

In suit against carrier for failure to deliver goods seized under legal process, presentation of bill of lading and claim for shortage thereunder by plaintiff *held* notice of ownership sufficient to require carrier to notify him of seizure.

3. Carriers &=105'(1)—Measure of damages for delay in shipment held decline in market value from time goods were received until they were delivered.

Where consignee recovered against carrier for delay in shipment caused by seizure under legal process, measure of damages was to be difference between market value of goods when received by carrier and market value when delivered.

Appeal from Harris County Court; Ben F. Wilson, Judge.

Suit by A. A. Bath and another against the St. Louis, Brownsville & Mexico Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Maurice Epstein, of Houston, for appellees.

LANE, J. This suit was brought by appellees, A. A. Bath and A. I. Gans, composing the copartnership of Bath & Gans,

against appellant, St. Louis, Brownsville & Mexico Railway Company, to recover the value of three bales of cotton alleged to have been lost in transit, while being shipped on an intrastate shipment. The sums sued for were $96.99 for loss on one bale marked "ZBR," $128.71 for loss of one bale marked "EPH," and $222.16 for loss of one bale marked "FEB"—a total sum of $447.86.

The defendant railway company answered, admitting liability for one of the bales of the value of $128.71 marked "EPH," admitted having received the other two bales, but alleged that said two bales, one marked "ZBR" and the other "FEB," had been taken from its possession by an officer of the law by virtue of two certain writs of sequestration.

The case was submitted to the court without a jury on the issues raised by the pleadings and upon certain agreed facts, together with other controverted evidence. The facts agreed to are substantially as follows:

That on or about August 25, 1920, 37 bales of cotton marked "ZBR" were delivered to defendant by Joseph Allen at Alamo, Tex., for transportation from said point to Houston, Tex.; a bill of lading being duly issued therefor, same being consigned to the order of Joseph Allen, notify Bath & Gans. That one of said bales of cotton marked "ZBR" was not delivered by defendant to plaintiffs, but was taken from the possession of defendant by Joseph Allen, constable of precinct No. 2, Hidalgo county, Tex., by virtue of a writ of sequestration issued in a suit filed in the justice court of Hidalgo county, Tex., by Earl Jefferson, a resident of Hidalgo county, against Joseph Allen, St. Louis, Brownsville & Mexico Railway Company, and Bath & Gans, a copartnership composed of A. A. Bath and A. I. Gans, whose principal place of business is in Houston, Tex.; said suit having been filed after said bill of lading had been issued by defendant for said 37 bales of cotton marked "ZBR," and, while said cotton was in the possession and custody of the defendant railway company on its platform. That in the above-described suit, no citation was issued for service on Bath & Gans, nor were said defendants ever served with citation. That defendant railway company did not notify Bath & Gans of the pendency of said suit, or that said bale of cotton had been seized. That said suit was dismissed, and thereafter a bale of cotton was forwarded by defendant to plaintiffs and received by them, it being a controverted question whether or not the bale of cotton so delivered was the bale originally shipped and marked "ZBR." That defendant railway company admits liability for $128.71, the value of the bale of cotton marked "EPH," and deposits such amount in the registry of the court.

That on or about August 31, 1920, 25 bales

of cotton marked "FEB," were delivered to defendant by Joseph Allen, at Alamo, Tex., for transportation to Houston, Tex., a bill of lading being duly issued therefor; said shipment being consigned to the order of Joseph Allen, notify Bath & Gans. That one bale of said cotton marked "FEB" was taken from the possession of defendant railway company by John Pilken, constable precinct No. 2, Hidalgo county, Tex., by virtue of a writ of sequestration, issued in a suit filed in the justice court of Hidalgo county by I. Konczak, a resident of Hidalgo county, against Joseph Allen, St. Louis, Brownsville & Mexico Railway Company, and Bath & Gans, a copartnership composed of A. A. Bath and A. I. Gans. That said suit was filed after defendant railway company had issued the bill of lading for shipment of the 25 bales of cotton marked "FEB" from Alamo, Tex., to Houston, Tex. That no citation was issued for service on Bath & Gans, nor was any service of citation had upon Bath & Gans, nor were they notified of said suit by defendant railway company, nor of the seizure of said bale of cotton, nor has same been received by plaintiffs.

It was shown that on or about the 21st day of August, 1920, Bath & Gans purchased from one A. C. Allen 37 bales of cotton at Alamo, Tex., said bales being marked "ZBR"; that said bales were delivered to the defendant for shipment and it issued its bill of lading therefor, reciting that the same was received from Joseph A. Allen and consigned to Joseph A. Allen, Houston, Tex., "notify Bath & Gans," Houston, Tex.; that a draft was drawn by the consignee on Bath & Gans for the sum of $1776.17 and attached to the bill of lading and forwarded to a Houston bank for collection; that Bath & Gans paid the draft on the 30th day of August, 1920, and received the bill of lading; that on the 7th day of September, 1920, Bath & Gans were notified of the arrival of the cotton, and they surrendered the bill of lading to defendant; that only 36 bales of the 37 shipped were delivered to Bath & Gans at that time, and they filed their claim with defendant for the missing bale, which bore the number 12925, weighing 585 pounds; that on or about December 7, 1920, defendant delivered to Bath & Gans one bale marked "ZBR," of same grade as the missing bale, and which weighed 441 pounds, same being tendered as the missing bale, which was accepted by Bath & Gans subject to a claim for difference in weight of the two bales; that the market value of the grade of cotton in the two bales on the 17th day of September, 1920, in Houston, was 28½ cents per pound, and that the market value of the same class of cotton at Houston on the 7th day of December, 1920, was 15.15 cents per pound; that on or about August 21, 1920, Bath & Gans purchased from A. C. Allen at Alamo,

Tex., 25 bales of cotton marked "FEB"; that said cotton was delivered to defendant for transportation to Houston, Tex.; that upon such delivery defendant issued its bill of lading therefor, reciting therein that it had received the same from Joseph Allen, as consignee, to be delivered to the consignee at Houston, notify Bath & Gans of Houston; that a draft was drawn by Joseph Allen upon Bath & Gans for $3,550, attached to said bill of lading and sent to a Houston bank for collection; that on the 4th day of September, 1920, Bath & Gans paid the draft and received the bill of lading; that on the 14th day of September, Bath & Gans returned the bill of lading to defendant and received 22 bales of said shipment, and on the 7th day of December, 1920, one bale of same, and on the 20th day of the same month one bale; that one of the bales marked "FEB," No. 13445, weighing 551 pounds, was never delivered to Bath & Gans, and that the market value of the bale of cotton not delivered was 17½ cents per pound at Houston on the 14th day of September, 1920; on the 17th day of December, 1920, 15.15 cents per pound, and on the 20th of said month was 14 cents per pound.

Upon the pleadings and the facts agreed to and shown by the evidence, the court rendered judgment for the plaintiffs against defendant for the sum of $447.86, with interest thereon from January 1, 1921, and for costs of court. From such judgment the defendant has appealed.

[1] The effect of the assignments of appellant, reduced to their ultimate, is (1) that the court erred in holding that appellees were entitled to recover any sum for the two bales of cotton taken from appellant's possession by an officer of the law by virtue of valid process after appellant had received and receipted for the same, upon the theory that it was the duty of appellant to notify Bath & Gans of the seizure of the cotton by the officer, which it failed to do, in that the undisputed evidence showed such seizure, and under such circumstances the liability of appellant as carrier ceased, and it should not be held responsible for its failure to deliver said cotton to the consignee at point of destination; (2) that the court erred in holding that appellant's failure to notify Bath & Gans of such seizure made it liable to them for the value of the cotton so seized, in that the undisputed evidence shows that the same was received by appellant under a contract of shipment on the order of Joseph Allen, the shipper to consign the same to him at point of destination, "notify Bath & Gans," in that the seizure and retention of said cotton was made and retained by virtue of valid legal process in a suit in which Joseph Allen, the consignee and apparent owner, was a party, and who had full knowledge of such seizure, appellant having no notice that Bath.

& Gans owned any interest in said cotton, they being neither consignors nor consignees; and (3) that the trial court erred, in that he used, as the measure of damages in assessing liability as to the ZBR bale of cotton, the difference between the market value of such cotton on September 17, 1920, the time when the cotton was received by appellant, and such market value on the 7th day of December, 1920, the time the ZBR bale was delivered to appellees, in that the undisputed evidence shows that the ZBR bale was taken from appellant, as common carrier, by an officer of the law by virtue of a valid writ of sequestration, on the 8th day of September, 1920; that the shipper of said cotton, who was, as shown by the bill of lading under which the shipment was made, consignor and consignee, was duly served with citation in the sequestration suit, and that, as soon as this suit was dismissed and the cotton released to appellant, appellant immediately delivered the same to appellees.

Answering the contentions so made by appellant, appellees do not contend that the failure of appellant to promptly ship and deliver to them· the cotton, because of the seizure of the cotton under the sequestration, would absolutely render it liable for nondelivery of the cotton or any part thereof which was retained by the officer by virtue of such seizure, nor for damages resulting from the holding of the cotton by the officer during the pendency of the sequestration suit, but they do contend that they were, at the time of the seizure, the owners of the cotton, and that appellant had notice that they were such owners, and that under such circumstances it was the duty of appellant, before it could relieve itself from liability, to notify the owners of the cotton that it had been taken by virtue of the writ of sequestration in order that the owner might make a proper defense; that, since appellees had no notice or knowledge of such seizure, and appellant failed to notify them thereof, appellant is liable to them for such damage as they suffered by reason of the nondelivery of the bale marked "FEB," and for the value of 141 pounds of cotton, the difference in the weight of the "ZBR" bale delivered to it for transportation and the one delivered to them in its stead; the bale so delivered to appellees being 141 pounds lighter than the one delivered to appellant for shipment.

They also contend that, under such circumstances, they were entitled to recovery for the lost cotton at the market price at the time the cotton should have been delivered to them had it not been seized, and that they were entitled to a recovery on the cotton delivered in December of the difference in the market price thereof at the time of the seizure and the market price of the same in December, such price having declined from the time of seizure to the time of delivery; that

the cotton in controversy was paid for by appellees and became their property before it was seized by the officer; that upon such payment the bills of lading upon which the cotton was transported were delivered to appellees, and that, when they were notified by appellant that the cotton had arrived, they delivered the bills of lading to appellant, and, upon finding a shortage in the number of bales, they immediately made claim to appellant· for the shortage, thus giving appellant notice that they were the owners thereof, which is shown by the undisputed evidence.

[2] We think the undisputed evidence shows that appellant was in possession of such facts as would authorize, if not compel, a finding by the trial court that it had notice that appellees Bath & Gans were the owners of the cotton in controversy at the time of the seizure of the same by the officer. Notwithstanding such notice, however, appellant would not have been liable to appellees for the cotton seized and held under valid legal process had it promptly notified appellees that the cotton had been taken by the officer, or had appellees been otherwise informed of such seizure. Danciger v. Railway Co. (Mo. App.) 179 S. W. 800, and cases cited therein. But it seems to be settled law that, in order to protect a carrier from liability, under circumstances such as shown in this case, it is necessary that the carrier at once notify the owner of the seizure, ·that such owner may make proper defense; such notice being required to enable the owner to protect his interest, in case such protection could probably be had by any act on the part of the owner. Robinson v. Memphis & C. Ry. Co. (C. C.) 16 F. 57; Hansen et al. v. Chase (D. C.) 37 F. 708; Danciger v. Ry. Co. (Mo. App.) 179 S. W. 800.

The case of Robinson v. Memphis & C. Ry. Co., supra, is a case with facts very much like the facts in the present case. In that case, decided by the circuit court of Tennessee, it was held, as shown by the syllabus, from which we quote, as follows:

"However the law may be elsewhere, the rule of the Supreme Court of the United States is that a seizure under legal process is a defense to the carrier in an action for nondelivery. But the mere seizure under valid process is not enough to excuse the carrier, for he must give immediate notice to the consignee; failing this, he becomes liable as in any other case of delivery to another person than his own bailee and assumes the burden of showing that the party seizing the goods under the process has the paramount title, unless he can show that the consignee had actual knowledge from other sources in due time to be equivalent to that notice he would have received if the carrier had not been negligent in this regard."

Many authorities are cited in support of the conclusions reached by the court in the Robinson Case.

In 10 Corpus Juris, p. 280, § 400 et seq., it is stated as a rule that, where goods are taken from the possession of the carrier by due legal process, the carrier, subject to certain limitations, is excused from further liability; but, where the carrier surrenders the goods under legal process, it should, to relieve itself from liability, at once notify the owner of the fact in order that he may make proper defense, and, in case the carrier fails to give such notice, it either becomes absolutely liable or assumes the burden of proving the regularity of all proceedings on which the goods were taken, unless it can show that the owner had actual knowledge from other sources in due time to assert his rights, or unless, under the circumstances of the particular case, no notice could possibly have given the owner an opportunity to protect himself.

Substantially the same rule as stated in Corpus Juris is stated in 4 R. C. L. p. 846, § 299. Both of these works cite authorities from many states in support of the rule stated

For the reasons above expressed, we overrule the first and second complaints of appellant.

[3] We have also reached the conclusion that the court did not err in using the measure of damage used in arriving at the damages suffered by appellees, and we therefore overrule appellant's third complaint.

For the reasons pointed out, the judgment is affirmed.

Affirmed